**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS LOCAL UNION NO. 1249 PENSION FUND,
by Ryan Youngman, as Administrator; INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL UNION NO. 1249 ANNUITY FUND, by Ryan
Youngman, as Administrator; INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL UNION NO. 1249 INSURANCE FUND, by Ryan
Youngman, as Administrator; NATIONAL ELECTRICAL
BENEFIT FUND, by its Board of Trustees; NEW YORK
STATE LINEMAN'S SAFETY TRAINING FUND, by its
Board of Trustees; NORTHEASTERN JOINT
APPRENTICE AND TRAINING FUND, by its Board of
Trustees; and I.B.E.W. LOCAL UNION NO. 1249 by
Mark Lawrence, as Business Manager,

5:24-cv-01154 (BKS/MJK)

Plaintiffs,

v.

ENERGY MAT ALLIANCE, LLC, and CHAD ROMAN
MYERS, Individually and as an Officer of Energy Mat
Alliance, LLC,

Defendants.

---

**Appearances:**

*For Plaintiffs:*
Nathaniel G. Lambright
Blitman & King LLP
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, NY 13204-1415

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs International Brotherhood of Electrical Workers Local Union No. 1249 Pension Fund ("Pension Fund"), by Ryan Youngman, as administrator; International Brotherhood of Electrical Workers Local Union No. 1249 Annuity Fund ("Annuity Fund"), by Ryan Youngman, as administrator; International Brotherhood Of Electrical Workers Local Union No. 1249 Insurance Fund ("Insurance Fund"), by Ryan Youngman, as administrator; National Electrical Benefit Fund ("NEBF"), by its Board of Trustees; New York State Lineman's Safety Training Fund ("Training Fund"), by its Board of Trustees; Northeastern Joint Apprentice And Training Fund ("NEAT"), by its Board of Trustees; and I.B.E.W. Local Union No. 1249 ("Local Union 1249"), by Mark Lawrence, as business manager, filed this action against Defendants Energy Mat Alliance, LLC ("Company"), and Chad Roman Myers, individually and as an officer of Defendant Company, alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Dkt. No. 1). Defendant Company has not answered the Complaint, and has not otherwise appeared in this action. Presently before the Court is Plaintiffs' motion pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for default judgment against Defendant Company. (Dkt. No. 17).[1]

In their First Cause of Action, Plaintiffs allege that Defendant Company has not paid contributions and deductions in the amount of $179,626.52 due for work performed under the relevant collective bargaining agreement for the period between December 2023 and May 2024.

---

[1] Plaintiffs originally filed a motion for default judgment as to both Defendants. But on November 26, 2025, this action was stayed due to Defendant Chad Myers' filing of a Chapter 7 Bankruptcy Petition. (Dkt. No. 22). On May 26, 2026, the Court received notice of an Order of Discharge in Defendant Myers' Chapter 7 case. (Dkt. No. 30); *see also In re Myers*, No. 25-32389 (Bankr. E.D.M.I. filed Nov. 4, 2025). On June 4, 2026, Plaintiffs requested that the Court "proceed to decide Plaintiffs' pending motion for default judgment against" Defendant Company. (Dkt. No. 35).

(*See* Dkt. No. 1, ¶ 27). Plaintiffs further allege that Defendant Company has not paid the "interest, liquidated damages, costs and fees of collection and attorneys' fees due and owing in connection with the unpaid fringe benefit contributions[,]" as required by the collective bargaining agreement, "the Trusts, the Collections Policy and/or 29 U.S.C. § 1132(g)(2)[.]" (*See id.* ¶¶ 26, 28).[2] For the reasons that follow, Plaintiff's motion for default judgment is denied.

## II.     DISCUSSION

### A.     Standard of Review and Clerk's Entry of Default

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1. Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b).

On October 30, 2024, Plaintiffs served the Summons and Complaint upon Defendant Company. (Dkt. No. 7-1, ¶ 4). On December 9, 2024, Plaintiffs requested a clerk's entry of default under Rule 55(a) for Defendant Company's failure to answer or otherwise appear in this action. (Dkt. No. 7). Plaintiffs' request was accompanied by an affidavit, as required by Local

---

[2] The Complaint's Second Cause of Action is a request that Defendant Company "be ordered to produce its books and records for the period of December 1, 2023, to date, for Plaintiffs' review and audit," and that if Defendant Company "has not properly submitted accurate reports" and "has not properly paid the appropriate monies to the Plaintiffs," for the Court to "enter a judgment for any and all contributions and deductions that are determined to be due for the period of December 1, 2023, through the date of disposition of this action," plus interest, liquidated damages, costs, and fees. (Dkt. No. 1, ¶¶ 30-39). As Plaintiffs do not address the Second Cause of Action in their present motion, (*see* Dkt. No. 17), the Court does not consider this cause of action.

3

Rule 55.1, showing that: Defendant Company is a corporation and thus is not an infant, in the military, or incompetent; Defendant failed to appear in this action; and Plaintiffs properly served the summons and complaint. (Dkt. No. 7-1). On December 10, 2024, Plaintiffs received a clerk's entry of default against Defendant Company. (Dkt. No. 9). Plaintiffs filed the instant motion for default judgment under Rule 55(b) on March 7, 2025. (Dkt. No. 17). Although Plaintiffs served the motion on Defendant Company, (*see* Dkt. No. 18), Defendant Company has filed no response. Therefore, Plaintiffs have met the procedural requirements for an order of default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b). Accordingly, the Court will address liability.

### B. Liability for Unpaid and Delinquent Contributions and Deductions

By failing to appear in this action or oppose this motion, Defendant Company is deemed to have admitted the factual allegations in the Complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (citation omitted)); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."), *report and recommendation adopted*, 2011 WL 1130457, 2011 U.S. Dist. LEXIS 32246 (E.D.N.Y. Mar. 28, 2011). But before entering default judgment, the Court must review the allegations to determine whether Plaintiffs have stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004).

4

Under Section 515 of ERISA:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

In the Complaint, Plaintiffs allege that Defendant Company is an employer "in an industry affecting commerce" as defined in 29 U.S.C. §§ 1002(5), (11) and (12), and also an "employer of employees covered by employee benefit plans and multiemployer plans maintained pursuant to a collective bargaining agreement," as defined in 29 U.S.C. §§ 1002(3) and (37). (Dkt. No. 1, ¶ 15). Plaintiffs allege that, at all relevant times, Defendant Company "had signed a Letter of Assent to be bound by the Outside Utility Agreement Between Northeastern Line Constructors Chapter[,] National Electrical Contractors Association, Inc. and Local Union No. 1249 of the International Brotherhood of Electric Workers[.]" (*Id.* ¶ 20). Plaintiffs refer to this agreement as the applicable collective bargaining agreement—the "CBA." (*Id.*).

Plaintiffs allege that pursuant to the CBA, Defendant Company is bound by the "terms and conditions, rules and regulations of" several Agreements and Declarations of Trust for the Local 1249 Pension, Annuity, and Insurance Funds (collectively referred to by Plaintiffs as the "Local 1249 Funds"[3]), the Training Fund, NEAT, NEBF, the National Labor Management Cooperation Committee ("NLMCC"), the Northeastern Line Contractors Administration Fund ("NELCAF"), and the Collections Policy of the Local 1249 Funds (the "Collections Policy"). (*Id.* ¶ 21).

---

[3] (*See* Dkt. No. 1, ¶ 6).

Plaintiffs allege that, for the period between December 2023 through May 2024, Defendant Company owes a combined total of $179,626.52 in contributions and deductions, "representing $145,315.85 in delinquent Local 1249 Funds' contributions; $9,802.31 in delinquent Training Fund contributions; $9,048.30 in delinquent NEBF contributions; $54.21 in delinquent NLMCC contributions; $2,262.10 in delinquent NEAT contributions; $3,770.15 in delinquent NEIF and NELCAF monies; and $9,373.60 in delinquent disability, PAC and dues deductions with regard to hours worked by employees covered by the aforesaid CBA." (*Id.* ¶ 27). Defendant Company has allegedly failed to pay these fringe benefit contributions and deductions "and has not paid the interest, liquidated damages, costs and fees of collection and attorneys' fees due and owing in connection with the unpaid fringe benefit contributions." (*Id.* ¶ 28).

Plaintiffs have submitted a copy of the relevant CBA, (Dkt. No. 17-8), along with copies of certain relevant Agreements and Declarations of Trust, (Dkt. Nos. 17-2 (Pension Fund); 17-3 (Insurance Fund); 17-4 (Annuity Fund); 17-5 (Training Fund); 17-6 (NEBF); 17-7 (NEAT)). The CBA says that it binds the employer to "the terms of the Plans and Trust Agreements under which the Funds are operating." (Dkt. No. 17-8, at 16). Employers bound by the Agreement must make payments to the various funds therein. (*See id.* at 8-16).[4]

---

[4] The relevant contributions under the agreement include:

(1) for each hour worked for all covered employees, $10.40 to the Insurance Fund, $14.50 to the Pension Fund, and $1.50 to the Annuity Fund, (*id.* at 13);
(2) 3.25% of the gross labor payroll to the Training Fund, (*id.* at 14);
(3) 3% of the gross monthly labor payroll to NEBF, (*id.* at 8);
(4) one cent per hour worked, up to a maximum of 150,000 hours per year, to NLMCC, (*id.* at 11-12);
(5) 1% of the gross labor payroll to NEAT, subject to change based on the amount of money in the NEAT fund, (*id.* at 16);
(6) not more than 1% "nor less than .2 of 1% of the productive electrical payroll" to NEIF, (*id.* at 10); and
(7) "3/4 of 1% of the rate of pay per hour for each hour worked" by each covered employee to NELCAF, (*id.* at 10).

The Local 1249 Funds are grouped together under the Agreement along with the Training Fund as Local Union 1249 "Fringe Benefit Funds." (Dkt. No. 17-8, at 13-14).[5] Payments to the Fringe Benefit Funds must be received no later than the 15th day following the end of the month during which hours are worked and for which contributions are required. (Dkt. No. 17-8, at 14). In the event the Fringe Benefit Funds commence a civil action to recover delinquent employer contributions, the delinquent employer "shall be required to pay . . . interest on the unpaid contributions at the rate of 2% per month," and "[a]n additional amount equal to the greater of (1) the interest on the unpaid contributions" or "(2) liquidated damages in of 20% of the unpaid contributions[.]" (*Id.* at 14-16).

With respect to NEBF, the employer is bound by the fund's "Restated Employees Benefit Agreement and Trust," and an employer must remit payment not later than fifteen calendar days following the end of each calendar month. (*Id.* at 8). Plaintiffs have provided a copy of the relevant portions of the NEBF Trust. (*See* Dkt. No. 17-6). The NEBF Trust states that, if an employer fails to make required contributions, the Trustees are authorized to impose liquidated damages in an amount up to 20% of the amount found to be delinquent, and the lost interest from the delinquent amounts, to be calculated at a 10% annual rate compounded monthly through the period of delinquency. (*Id.* at 12).

For NELCAF and NLMCC, the Agreement requires that payment be forwarded monthly, and no later than fifteen days following the last day of the month in which the labor was performed. (Dkt. No. 17-8, at 10-11). With respect to NLMCC, in the event of a default, the Agreement also states that the employer "shall be liable for a sum equal to 15% of the delinquent

---

[5] Plaintiffs also allege that the "Local 1249 Funds" are "collection agents" for NLMCC, NEIF, NEAT, and NELCAF. (Dkt. No. 1, ¶ 6). In his affidavit, business manager Mark Lawrence avers that the Local 1249 Funds are also the collection agents for NEBF. (Dkt. No. 17-1, ¶ 11).

payment, but not less than the sum of twenty dollars, for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages[,]" and that amount "shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of [10%] per annum until paid." (*Id.* at 12).

By virtue of these contractual provisions, Plaintiffs' allegations that Defendant Company has failed and refused to pay the fringe benefit contributions and deductions due for work in covered employment from December 2023 through May 2024 is sufficient to establish Defendant Company's liability for delinquent contributions and deductions under ERISA, the interest due thereon, liquidated damages, and reasonable attorneys' fees and costs—but only with respect to the Local 1249 Funds, the Training Fund, NEBF, NELCAF, and NLMCC. *See United States v. Beam*, No. 12-cv-87, 2012 WL 1802316, at *2, 2012 U.S. Dist. LEXIS 69054, at *4 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that[it] is bound by the terms of the [Agreement] [it] entered into with plaintiff."); *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (finding the defendant liable to the plaintiff funds under Section 505 of ERISA, 29 U.S.C. § 1145 for failing, inter alia, to pay delinquencies).

Plaintiffs have failed to establish Defendant Company's liability as to the remaining funds. With respect to NEIF, Defendant Company's Letter of Assent indicates that "if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the [NEIF]." (Dkt. No. 17-8, at 2). It is unclear whether this provision, which cites an order issued in 1980 by the United States District Court for the District of Maryland, is still applicable to the parties' agreement. (*Id.*). Because Plaintiffs have not

8

addressed the significance of this provision, and they have not alleged that Defendant Company is a member of the National Electrical Contractors Association, the Court does not find that Plaintiffs have established Defendant Company's liability with respect to the NEIF funds.

With respect to NEAT, the Agreement provides that the "Area Training Agreement" entered into by Local Union 1249 "shall govern all matters of apprenticeship and training, and the financing thereof." (Dkt. No. 17-8, at 16). Plaintiffs have provided a portion of the Northeastern Joint Apprenticeship and Training Trust Fund Agreement, which says that employers shall contribute "in the amount and manner provided in or by reference to the Area Training Agreement[.]" (Dkt. No. 17-7, at 3). The Trust Fund Agreement does not contain any additional information as to the manner or timeliness of payment, nor the criteria for delinquency. Plaintiffs have also provided a "Collections Policy," but that policy appears to apply only to the Local 1249 Insurance Fund and Pension Fund. (*See* Dkt. No. 17-9, at 2).

The Court is also unable to ascertain the basis of Defendant Company's liability for any allegedly unpaid "disability, Union dues deductions and Political Action Committee ["PAC"] monies." (*See* Dkt. No. 1, ¶ 24). Neither the Trust documents nor the Collections Policy supplied by Plaintiff appear to contain a provision relating to these funds.[6] The Court has no basis to find that Defendant Company is delinquent with respect to these funds.

Because the Court finds that Plaintiffs' allegations are insufficient to support a finding of liability at this time with respect to NEIF, NEAT, and deductions for disability, PAC, and Union dues, the Court denies Plaintiffs' motion for default judgment on Plaintiffs' first cause of action.

---

[6] The Affidavit of Mark Lawrence, business manager, does not provide any additional clarity. (*See* Dkt. No. 17-1). Lawrence avers that the "Trust and Collections Policy requires that the Defendant Corporation deduct . . . amounts represent[ing] disability, Union dues, deductions, and Political Action Committee ['PAC'] monies." (Dkt. No. 17-1, ¶ 16). However, this paragraph contains no citation, and there is no single "Trust and Collections Policy" identified in the record.

9

However, because the Court perceives additional deficiencies in Plaintiffs' motion with respect to damages, the Court will briefly address damages below.

### C.     Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). "Magistrate judges and district courts have interpreted this to mean that . . . damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010).

### 1.     Unpaid and Delinquent Contributions

In their motion for default judgment, Plaintiffs seek to recover $179,626.52 in unpaid contributions, $33,408.55 in interest, and $34,576.57 in liquidated damages, for a total of $247,611.64. (Dkt. No. 17-1, ¶ 21).

ERISA's civil enforcement provision provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
>> (A) the unpaid contributions,
>> (B) interest on the unpaid contributions,
>> (C) an amount equal to the greater of—
>>
>>> (i)     interest on the unpaid contributions, or
>>> (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent

(or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

In support of their request for damages, Plaintiffs have submitted the Affidavit of Mark Lawrence, (Dkt. No. 17-1 ("Lawrence Affidavit")), remittance reports, (Dkt. No. 17-10), and a spreadsheet setting forth the corresponding calculations, (Dkt. No. 17-11). However, there are several inconsistencies between the damages sought in the Complaint, the damages supported by the CBA, and the damages outlined in the Lawrence Affidavit.

The CBA appears to group the Local 1249 Funds and the Training Fund together under one delinquent contributions policy, which calls for interest at the rate of 2% per month on the unpaid contributions. (Dkt. No. 17-8, at 14-16). However, the Complaint seeks interest on the delinquent Training Fund contributions at the rate "prescribed by ERISA" under 29 U.S.C. § 1132(g)(2), (Dkt. No. 1, ¶ 26), which—according to an affidavit from Plaintiffs' counsel—was set at 8% during the relevant period, (Dkt. No. 17-14, ¶ 9). Moreover, the calculations accompanying the Lawrence Affidavit indicate that interest on the Training Fund was calculated at the rate of 4%. (*See* Dkt. No. 17-11).

For the NEAT fund, the Complaint also seeks interest at the rate prescribed by ERISA. (Dkt. No. 1, ¶ 26). Here, the CBA is silent on how interest should be calculated, so—unless the

11

missing "Area Training Agreement" dictates otherwise—it would be appropriate to apply the rate prescribed under section 6621 of Title 26. *See Upstate New York Eng'rs Health Fund v. Ransom*, No. 13-cv-1434, 2015 WL 145441, at *4, 2015 U.S. Dist. LEXIS 2965, at *11 (N.D.N.Y. Jan. 12, 2015) (explaining that under ERISA the plaintiffs are "entitled to interest on the unpaid contributions at the rates provided by the Trusts and [Agreements] or, where the Trusts and [Agreements] do not provide a rate, at a rate prescribed by 26 U.S.C. § 6621" (citing 29 U.S.C. § 1132(g)(2)(B))). But here again, the Lawrence Affidavit and its accompanying calculations show an interest rate for the NEAT fund of 10% rather than 8%. (Dkt. No. 17-11).

Finally, for NELCAF, the CBA dictates that the "contributions to the Fund shall be subject to the same delinquency requirements as the other Trust Funds set forth in this Agreement." (Dkt. No. 17-8, at 11). However, it is not clear whether that means NELCAF funds are subject to the same interest and/or liquidated damages requirements as the other funds in the CBA, and in any event, there is no uniform interest rate or liquidated damages rate across all of the Plaintiff funds. Plaintiffs do not offer any basis for the 9% per annum interest rate used in the Lawrence Affidavit calculations. (*See* Dkt. No. 17-11).[7]

These are the most obvious inconsistencies, but they may not be all of them. Neither the Lawrence Affidavit nor Plaintiff's Memorandum of Law consistently provide clear citations to the record, and the Court is apparently missing documents that form the basis of Plaintiffs' claims. While the Court understands that there are numerous funds that must be accounted for—each with potentially different delinquency requirements—the Court must "determine the damages based on appropriate evidence." *Transatlantic Marine Claims Agency, Inc. v. Ace*

---

[7] The NELCAF funds are also, inexplicably, combined with the NEIF funds in the Complaint and in the Lawrence Affidavit. (*See* Dkt. Nos. 1, ¶ 26; 17-1, ¶ 20). The portion of the CBA that addresses NEIF does not prescribe an interest rate or a liquidated damages requirement for that fund. (*See* Dkt. No. 17-8, at 10). Accordingly, there is also no clear basis for the 9% per annum interest rate used in the NEIF calculations.

*Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). Without clear evidentiary support and an accompanying explanation identifying what evidence supports the proposed damages for *each fund*, the Court has no basis upon which to determine "that the damages [are] appropriate" in this case. *Id.*

### 2. Attorneys' Fees and Costs

Plaintiffs appear to have adequately supported their request for an award of attorneys' fees and costs with an affidavit and contemporaneous billing records. (*See* Dkt. Nos. 17-14; 17-15). However, the Court will reserve decision as to attorneys' fees and costs pending receipt of further briefing as noted above.

## III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for default judgment (Dkt. No. 17) is **DENIED without prejudice to renewal**; and it is further

**ORDERED** that Plaintiffs must file and serve any renewed motion for default judgment within 30 days of the date of this Decision. Any renewed motion for default judgment must: (1) include briefing and documentary evidence addressing the deficiencies identified above; and (2) address how Plaintiffs seek to proceed on the remaining causes of action. If Plaintiffs do not wish to file a renewed motion for default judgment, they must file and serve a status report within 30 days of the date of this Decision stating how they intend to proceed; and it is further

**ORDERED** that Plaintiffs serve copies of this Memorandum-Decision and Order on Defendants, Defendant Myers' bankruptcy attorney, Gregory J. Ekdahl, and Bankruptcy Trustee Collene K. Corcoran, and file a certificate of service within 14 days of the date of this Decision.

**IT IS SO ORDERED.**

Dated: <u>August 10, 2026</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

13